Plaintiff brought this suit for damages against defendants, alleging breach of contract.
Under date of October 7, 1940, plaintiff, appellant, made a proposal to the three defendant companies who were engaged as associates in the joint venture of the construction of Cantonment Area No. 6, known as Camp Livingston, near Alexandria, Louisiana. The body of the proposal was as follows:
"We propose and agree to furnish all butane gas for your buildings in Cantonment Area #6 for the 1940 and 1941 winter season at a price of 8¢ per gallon delivered in your underground systems.
"Your acceptance of this proposal may be certified by signing in the space provided below."
This offer was signed for the Dockson Gas Company by J.C. Sanderson, Manager. It is established that Sanderson was really the sole owner of the business and was doing business under the name of Dockson Gas Company.
The proposal was agreed to and signed on behalf of all the defendants by J.G. Estes, as Project Manager.
Under date of October 6, 1940, the following proposal, which was properly admitted in evidence over objection of counsel for the defendants on trial of the case, had been made by plaintiff and agreed to by J.G. Estes, as Project Manager for the defendants:
"This is to confirm our conversation of even date wherein the Dockson Gas Company has agreed to furnish two genuine Hydro Butane Systems, with Vaporizer and Re-Vaporizer (capacity each 1114 gallons), together with heaters, as outlined in our proposal under date of September 30, 1940. Same to be delivered to your temporary buildings division Cantonment Area #6 for a consideration of $1,398.00. When your Company has made the complete installation of your system and appliances the Dockson Gas Company agrees to test same in accordance with the provisions of the Louisiana Public Service Commission.
"We are preparing this agreement in triplicate in order that you may have two copies for your files."
The systems referred to in the agreement of October 6th were installed and paid for. Delivery of butane gas by plaintiff to defendants began on October 20, 1940, and continued to December 17, 1940.
After December 17, 1940, the plaintiff attempted on several occasions to make deliveries of gas by truck to defendants' storage facilities, but the defendants refused to accept any further deliveries of butane gas. Plaintiff persisted in the attempt to continue deliveries, but despite re-assurance of future orders no butane gas was ordered or accepted after the date of December 17, 1940. As a matter of fact, defendants made connection with a natural gas line and used natural gas for fuel exclusively for the purpose of heating their buildings in Cantonment Area #6 from and after December 17, 1940.
Defendants filed an exception of no cause or right of action, which was properly overruled by the trial Judge.
The principal contention on behalf of defendants is that the agreement of October 7th is void and unenforceable on the ground of want of mutuality, and further that such agreement is void because of uncertainty as to the amount of butane gas contracted for and the time over which the contract was to remain effective. Defendants finally contend, in the alternative, that the use of natural gas instead of butane gas did not constitute a breach of contract since defendants never had bound themselves to refrain from using any fuel except butane gas. *Page 849 
After trial on the merits there was judgment rejecting plaintiff's demands, and from this judgment plaintiff prosecutes this appeal.
Able counsel for both plaintiff and defendants appear to accept the proposition that the main issue in this case is a determination as to whether the agreement of October 7th is a valid and binding contract, or is a nudum pactum, because of want of mutuality. We agree that this is a point of fundamental importance which must first be considered and decided in the determination of the case.
Rules for the interpretation of agreements are provided by our Civil Code. The intent of agreements is to be determined by the words of the contract, when these words are clear and explicit and lead to no absurd consequences. But the Code also stipulates that it is the intention of all the parties to an agreement that is to be sought for and determined.
It is further provided that ambiguities or doubts may be resolved and explained by reference to other contracts or agreements on the same subject between the same parties. It is the duty of courts to construe agreements in accordance with the common intention of the parties, rather than to adhere to the literal meaning of the terms of the agreement.
The above principles are very definitely established in Articles of the Revised Civil Code of the State of Louisiana dealing with the interpretation of agreements, particularly Articles 1945, 1949 and 1950. Also see Boisseau v. Vallon 
Jordano, Inc., et al., 174 La. 492, 141 So. 38.
In applying these rules it becomes apparent that the agreement of October 6th must be considered in construing the agreement of October 7th. Both agreements were made by the same parties with reference to the same subject matter. The Dockson Gas Company was interested in selling butane gas, and, incidentally, in selling heating systems designed to use butane gas. The associate contractors engaged in construction were interested in procuring fuel for heating their temporary office buildings in the construction area. Under the terms of the agreement of October 6th heating systems were installed, and under the terms of the agreement of October 7th a source of fuel for these heating units was contracted for. In other words, plaintiff and defendants were engaged in a course of negotiations, the former interested in selling its product, and the latter interested in using this product for a certain definite purpose.
Reference to the testimony strengthens the conclusion that these agreements were really integral parts of the same transaction. Mr. J.G. Estes, Project Manager for the defendant companies, who accepted the proposals on behalf of defendants, testified as follows:
"The Dockson Company were naturally trying to secure some business, and knowing that we needed heat for our temporary offices, quoted us a price for furnishing equipment and butane gas."
The same witness further testified:
"Negotations leading up to their proposal was carried on for several days, at which time the Dockson Gas Company were obtaining an estimate on the cost of furnishing the equipment and the cost of installation. I did not request a proposal from them until I had some information as to the cost of installation of the butane gas system."
The inferences to be drawn from the above quoted testimony of the Project Manager are conclusive, and it is obvious that the proposal to furnish fuel was made at the request of the Project Manager after he had been satisfied as to the installation of the butane gas system.
Counsel for the defendants rely upon the well established principle that unless both parties are bound there is no contract. In this instance the defendants are attempting to escape liability on the ground that they were not bound by the agreement to which they had assented, and which, as a matter of fact, had been proposed at their request.
The record discloses the uncontradicted fact that both parties actually carried out the terms of the agreement until date of December 17, 1940. Plaintiff furnished butane gas to the extent of several thousand gallons at the agreed price of 8¢ per gallon, which gas was delivered between the dates of October 20th and December 17th, 1940, and which was received, used as fuel for heating and duly paid for by the defendants.
Article 1956 of the Civil Code provides that when the intent of the parties is doubtful, the construction put upon it by the manner in which it has been executed *Page 850 
by both or by one, with the express or implied assent of the other, furnishes a rule for its interpretation.
Certainly the application of this principle unquestionably establishes the fact that there was neither ambiguity nor uncertainty in the minds of either of the parties as to the meaning and interpretation of the agreement from the date of execution until the date of December 17, 1940.
There is certain testimony in the record by Mr. Estes to the effect that the butane system became unsatisfactory and impracticable. However, Mr. Estes himself testifies that the construction project was increased in size beyond anyone's expectations; that the defendants' office force was tripled in size, and that it became necessary to make connections with a natural gas line which had been laid to the area. Nowhere in the record is there one single word to indicate that any expression of dissatisfaction had ever been communicated by the defendants to the plaintiff. Plaintiff apparently had no warning of the fact that the defendants contemplated a change in heating systems, and the first knowledge came, according to the testimony in the record, on or about the date of December 19th, when delivery of butane gas by plaintiff's truck in the regular and accustomed performance of its duties of supply was arbitrarily refused by the defendants.
Defendants rely upon the case of Campbell v. Lambert, 36 La.Ann. 35, 51 Am.Rep. 1, in which the Court held the alleged contract to be a nudum pactum. This case concerned an agreement for the delivery of quantities of coal at a stipulated price. The Court held that there was no binding obligation upon the plaintiffs to take any specific or given amount of coal, therefore there was no mutuality of agreement, and, consequently, no contract.
We feel that there is a definite distinction between the Campbell case and the case now before the Court, and in substantiation of this distinction we point to the words of the Court taken from the opinion in the Campbell case, as follows:
"Defendants have, at considerable cost to themselves, striven to comply with an unconscionable bargain by which they were not legally bound and we think they are entitled to relief under their prayer for amendment of the judgment."
In the later case of Landéche v. Sarpy, 37 La.Ann. 835, the Court was called upon to interpret an agreement by which the plaintiff was bound to furnish and defendant to receive and pay for hogsheads and barrels to be furnished for certain plantations of the defendant. It is significant that in this case the agreement did not specify any given quantity but provided for delivery of all the hogsheads and barrels necessary for the sugar and molasses to be made during the crop year of 1882 on two plantations of the defendant, at a stipulated price. After the contract had been partially complied with, plaintiff discontinued performance. The Court held that the agreement was a valid reciprocal contract, and, in its opinion, formally noticed the decision in Campbell v. Lambert. In commenting on the Campbell case the court stated that the agreement therein concerned a given quantity of a merchantable article fluctuating in price, the effect of which was to enable the promisee to enforce the sale in a favorable market and to abstain if the market were against him. The following quotation is taken from the Court's opinion:
"In point of fact, in Campbell's case, the promisee claimed a profit of $29,000, on an executory contract under which he ran no possible risk of loss. In comparison with a system of law sustaining such a contract the ethics of the gambler's code would have been respectable; for that prohibits betting on a certainty."
In the case of Nelson v. Barber, 143 La. 783, 79 So. 403, the Court fixed as one of the tests for validity the principle that the acceptance of a proposal to deliver so much of a certain article within a time fixed as might be required by the acceptor for the purpose or need of an established business was binding upon the acceptor.
Certainly in this case fuel for heating was a necessity to the defendants and their agreement to the proposal was not an agreement to take such amount of a commodity as their whim or caprice might indicate, but to take such amount as would be required for the purpose of heating their buildings in Cantonment Area No. 6.
The facts and the principles of law involved in this case are almost exactly similar to those in the case of S.B. Smith 
Company v. R.S. Morse Company, 20 La.Ann. 220, in which the court sustained *Page 851 
the validity of a contract where the defense was specifically made that the contract was not binding because one of the parties might at pleasure refuse to take any ice, which was the commodity involved, leaving the other party without redress.
This Court has already established the principle that a party, who would take advantage of a lack of mutuality in what is intended to be a commutative contract, is obliged to do so seasonably and may not delay until the other party has executed it. Oliver et al. v. Home Service Ice Company, Inc., La.App., 161 So. 766 (Opinion by Judge Taliaferro. In this case writs were refused by the Supreme Court).
On the basis of the principles above discussed, it is our conclusion that an agreement, entered into in good faith, whereby one party agrees to supply, over a period of time, a particular commodity at a stipulated price, to be used for a necessary purpose by the other party, is valid. Particularly is this true where the parties have acted under the agreement in accordance with the provisions thereof.
As to the period of time comprehended by the expression "for the 1940 and 1941 winter season" both the temperature readings introduced by the plaintiff and climatological data introduced by defendants conclusively establishes the fact that the period of time between the dates of December 17, 1940, and March 15, 1941, constitutes a part of the winter season in the vicinity of Alexandria, Louisiana.
In the absence of any proof to the contrary, it must be concluded that the reasonable demands and needs of the defendants for fuel for heating purposes would have continued from the date of December 17, 1940, to at least March 15, 1941, a period of three months, and it also follows that the monthly consumption for this three-month period would not have been less than the actual consumption between November 18, 1940, and December 17, 1940. The evidence in the record establishes the fact that 3,858 gallons of butane gas were delivered in the thirty-day period between November 18th and December 17th, 1940. Plaintiff has further established a profit of 3 3/4¢ per gallon on this amount, or a profit of $144.66. Basing his demands upon this theory, plaintiff has sued for the recovery of $433.98, or exactly three times the amount of profit actually taken during the thirty-day period referred to.
We feel that plaintiff's claim for damages is not only reasonable, but conservative, and that the amount thereof has been established beyond question.
Damages due the creditor for a breach of contract are measured by the amount of loss sustained and the profit of which he has been deprived. Civil Code, Article 1934.
For the reasons assigned, the judgment appealed from is reversed and set aside, and there is judgment in favor of plaintiff, Dockson Gas Company, Joseph C. Sanderson, owner, and against the defendants, S. W. Construction Company, and the individual members thereof, namely, Clinton J. Wagner and Erich E. Schmeid, and H.N. Rodgers Sons Company, and the individual members thereof, namely, H.N. Rodgers, Sr., H.N. Rodgers, Jr., Martha Rodgers Folk, and J. Warfield Rodgers, and Forcum-James Company, in solido, in the full sum of Four Hundred Thirty-Three and 98/100 ($433.98) dollars, with legal interest thereon from judicial demand until paid, and for all costs of both courts.
 *Page 65