274 So.2d 499 (1973)
Habeeb MONSUR, Jr., Plaintiff and Appellee,
v.
Herschel C. CHADDICK, Defendant and Appellant.
No. 4108.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1973.
*500 Holt, Wagner & Lee by Richard E. Lee, Pineville, for defendant and appellant.
Mansour & Lauve by Alfred A. Mansour, Alexandria, for plaintiff and appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
In the latter part of 1968 defendant, Herschel C. Chaddick, owned a strip of land fronting on a highway in Rapides Parish, Louisiana. In order to improve the said highway, the Department of Highways of the State of Louisiana was planning to expropriate defendant's land. Defendant became aware of the impending expropriation and was fearful of receiving a diminutive price for his property, which he thought would be in the range of $150,000.00 Accordingly he sought out the services of plaintiff, Habeeb Monsur, Jr., a well known real estate entrepreneur in the Alexandria, Louisiana, area.
The two agreed that Monsur would make an effort to influence the State to pay defendant a proper price for his land, *501 and reduced their agreement to writing as follows:
Herschel C. Chaddick agrees to pay Hab Monsur 6% commission on any price of $200,000 or over that said Hab Monsur is able to negotiate with the State in the expropriation of property that Mr. Chaddick owns on Baton Rouge Highway.
The quoted contract was actually the second one executed by plaintiff and defendant. The first one was worded in such fashion as to indicate that plaintiff would only receive 6% of the price received over and above the sum of $200,000.00, whereas it was the intention of the parties that he should receive as compensation 6% of the entire price if such price was at least $200,000.00. Defendant noticed the error and pointed it out to plaintiff, whereupon the first contract was destroyed and the one above quoted was executed.
Plaintiff testified that pursuant to his contract with defendant, he contacted Darrell V. Willet and T. J. Toups, the two appraisers which the State employed to determine the value of defendant's land. He presented Willet and Toups with certain information, including comparable sales, that would indicate that the land in question was more valuable than they at first thought. Additionally, when it was discovered that a lease containing provisions that were restrictive of the uses to which the property could be put was in effect, plaintiff engineered an amendment to the lease that removed the restrictions. Of course, as said by Willet, the land was more valuable when free of the restrictions.
Plaintiff further testified that he went to the appraisers, rather than to anyone else in the Highway Department, because it was his experience that once a figure was reached by the appraisers the Department would be unwilling to negotiate or change it. Thus, if a reasonable price was to be obtained it had to be done before a final appraisal was made.
The plaintiff's testimony was corroborated in whole or in part by three witnesses: Willet, Toups, and Neil Daspit, who had originally recommended plaintiff to defendant.
The Highway Department reached a valuation of $251,000.00 on all of defendant's land, then decided that it need not expropriate all of the property. Accordingly, when the expropriation suit was filed on November 6, 1969, the Department deposited only the sum of $234,794.00 as its offer of just compensation for the part of defendant's land that it desired to expropriate.
In the meantime, in October, 1968, defendant had retained an attorney to represent him in the same matter, but told him nothing of plaintiff's involvement until some two months later. The attorney engaged in considerable negotiations with the attorneys for the Highway Department and with Paul E. Litrette, who at the time was the right-of-way engineer for that Department, and the only person therein that was authorized to negotiate the prices to be paid for lands to be expropriated. These efforts ultimately resulted in a total price of $303,935.29 being paid amicably by the Highway Department for the property that it sought.
Plaintiff was unable to secure payment of his commission from defendant, and on March 17, 1971, he filed suit for 6% of $303,935.29 or $18,236.11. Following a trial on the merits judgment was rendered in favor of plaintiff and against defendant for the sum of $15,060.00 representing 6% of $251,000.00. Defendant appealed that judgment to this court.
Defendant takes two basic tacks in attacking the judgment, i. e. that the contract was invalid to begin with, and that plaintiff failed to show his performance under the contract.
Defendant makes much of the fact that the State's appraisers, Willet and Toups, were prohibited from negotiating with anyone both by their contracts with the State and by the rules of the Highway Department. Indeed this prohibition was testified to, inter alia, by Willet, Toups, and Litrette. Their testimony also shows, *502 however, that whereas the State will not allow its appraisers to negotiate a price with the property owner, it does permit, and in fact encourages, its appraiser to talk to the landowner or his representatives and discuss the value with them in order that a just amount of compensation will be arrived at. This type of discussion would therefore be neither illegal nor contra bonos mores, as defendant would have us believe, and it bears no sinister connotations. Rather, it is a proper means of achieving a just and equitable valuation on the property to be expropriated.
That plaintiff engaged in such discussion, or "negotiation", with Willet and Toups is shown in the foregoing statement of the facts, but defendant argues that in doing so plaintiff was not complying with the contract as it states that he would "negotiate with the State". The evidence shows that Willet and Toups were not agents of the State but were instead independent contractors retained by the Highway Department on a case by case basis to appraise properties that it intended to expropriate. It further shows, as aforesaid, that Willet and Toups had no authority to negotiate for the State. Defendant's position is that this evidence proves that in talking to Willet and Toups plaintiff did not talk to the State and that he therefore did not comply with terms of the contract. We find this to be a persuasive but futile defense.
It is well settled in our law that in interpreting contracts about which there exists some doubt the courts must seek the true intention of the parties thereto, even if to do so necessitates a departure from the literal meaning of the terms in the agreement. LSA-C.C. Art. 1950; Steckler v. Continental Oil Company, La.App., 154 So.2d 647; Molero v. California Company, La.App., 145 So.2d 602, writ refused; Dockson Gas Co. v. S. & W. Const. Co. et al., La.App., 12 So.2d 847. The true intention of the plaintiff and defendant herein was clearly that plaintiff should make an effort to obtain a price which was at least $50,000.00 higher than that which defendant supposed he was going to be offered by the State, in consideration of a commission amounting to 6% of the price obtained. Plaintiff carried out his part of the bargain in the manner which he deemed most expedient both from his knowledge of the procedure followed by the State in setting the price that it will voluntarily pay to a property owner, and from his experience, gained by officiating in a like capacity on previous occasions. There is nothing contained in the record which would in any way indicate that defendant ever intended that plaintiff should do otherwise. Rather, all of the evidence makes it clear that such is precisely what defendant intended. He sought out the services of plaintiff in order that he might profit from the latter's knowledge and experience, and he agreed to pay him for whatever benefits he might derive. Under the above cited statute and jurisprudence we will not now allow defendant to escape his responsibility by adhering to a technical interpretation of the terms used in the contract.
The trial judge was correct in allowing plaintiff to recover, however we opine that he erred in setting the quantum. As aforesaid he awarded plaintiff 6% of $251,000.00, the value that was originally placed on all of defendant's property by the Highway Department. Subsequently, however, the Department concluded that it did not require all of defendant's property and it deposited the sum of $234,794.00 representing its estimate of the value of the property that it did require, and that in fact was eventually taken. Because all of defendant's property was not taken we do not opine that plaintiff is entitled to recover a percentage of the price that was fixed for all of the property. Rather we think it just and equitable that he recover only a commission of 6% of the price that the Highway Department offered upon the termination of plaintiff's efforts, for the part of defendant's property that was actually taken. That price we find to be the sum that was deposited by the Highway Department, $234,794.00. Accordingly, *503 plaintiff is entitled to 6% of $234,794.00, or $14,087.64.
For the above and foregoing reasons the judgment of the District Court is amended so as to reduce the award therein made from the sum of $15,060.00 to the sum of $14,087.64, and as thus amended is affirmed. Defendant-appellant is to pay all costs in this and in the District Court.
Amended and affirmed.