PONDER, Judge.
James Barber, plaintiff in one suit and defendant in a consolidated case, appealed the trial court’s judgment ordering him to *663 pay damages and attorney’s fees and refusing him recovery for the breach of a purchase agreement on a house.
The issues on appeal are the breach of the purchase agreement and damages.
We reverse and render.
James Barber and Yago Enterprises, Ltd., entered into a purchase agreement of a house already being constructed. The parties also entered into an “agreement to occupy” which allowed James Barber, the buyer, to move into the house prior to the closing. James Barber deposited $500.00 under the two agreements.
Barber refused to go through with the sale on April 15th, saying that certain defects in the house had not been corrected. He and Dr. Santiago Vilas, the vice-president of Yago, on April 18th, entered into a subsequent written agreement that eight listed defects would be corrected by April 25, 1980. Both parties testified that they intended the sale to take place on the 25th, after the defects were corrected.
Barber filed suit for Yago’s failure to correct the defects, breach of the purchase agreement, the return of his deposit and attorney’s fees. Yago sued Barber for rent during his occupation of the house, depreciation of the value of the house, the costs of repairs necessitated by Barber’s occupancy and attorney’s fees. The two suits were consolidated.
The trial judge, in written reasons, found that Barber breached the purchase agreement when he refused to go through with the sale, because the list of defects had been “substantially completed,” because the remaining defects were not substantial when compared to the overall value of the home, and because he had some alternative remedies, especially an. action in redhibition. Yago was awarded rent in the amount of $26.35 per day during Barber’s occupancy, damages for the cost of repairs to carpet, formica, and for the replacement of locks, the interest Yago paid on the construction loan from the date Barber moved out until it was sold to a third party, and attorney’s fees in the amount of $1500.00. Barber’s deposit of $500.00 was to be credited.
Barber argues that because he was entitled to inspect the premises and have the Seller correct any defects under the purchase agreement and because Yago did not correct the punch list items of the April 18th agreement, Yago breached the agreement, giving Barber the right to avoid the sale. We agree.
Barber proved the existence of defective craftsmanship in the sheetrock work on the wall of the den and a leak in the fireplace which allowed moisture to get in the surrounding carpet.[1] These defects existed while Barber occupied the house and after-wards when it was sold to a third party.
Although the trial judge stated that Barber had other available remedies to correct the problems, such as an escrow account to remedy the defects, we find that Barber was not obligated to accept some other remedy under the purchase agreement. Yago Enterprises was obligated to remedy the defects promptly and breached the terms of the purchase agreement in failing to do so.[2] It also breached the April 18th agreement. Barber was justified in not going through with the purchase agreement.
The trial court erred in using the standard of “substantial completion,” which is appropriate for construction contracts. Barber had no input on the selection of the lot or house plans and specifications. Yago put the house on the market with the intention of selling an “existing thing.” The parties did not intend to contract for the *664 “undertaking of a building or a work.” Louisiana Civil Code Article 2756.[3] See Hermeling v. Whitmore, 140 So.2d 257 (La.App. 1st Cir.1961). The subsequent “punch-list” agreement was an attempt to remedy the problems of the purchase agreement, but cannot be classified as a construction contract.
Contradictory testimony was given concerning the agreement to occupy. Barber testified that the agreement was brought to him by his real estate agent and he filled in the form allowing him to occupy the house at no cost.[4] Dr. Vilas testified that the terms of the agreement as indicated by an added handwritten clause, required the buyer to pay rent based on the per diem interest paid by the seller on the construction loan. There is no testimony as to who added the handwritten words. The trial judge believed the testimony of Dr. Vilas and awarded an amount for rent. There was never a “meeting of the minds” between the parties and we find that the “agreement to occupy” never came into existence. However, rent was properly awarded, because otherwise Barber would have been “unjustly enriched” by being allowed to occupy the premises at no cost without going through with the sale. Louisiana Civil Code Article 1965.[5] See Blair v. Diaz, 342 So.2d 1237 (La.App. 4th Cir.1977), writ denied, 345 So.2d 59 (La.1977), Groghan v. Billingsley, 313 So.2d 255 (La.App. 4th Cir.1975), writ denied, 318 So.2d 46, 48 (La.1975). The figure of $20.00 per day for rent on a quasi-contract basis, is a reasonable figure.[6]
The purchase agreement states only that the deposit is not earnest money. Also, Dr. Vilas specifically testified that he was not suing for a forfeiture of the deposit. We find that Barber is entitled to a return of his deposit.
We agree with the trial court’s ruling that Barber should be responsible for the damage incurred while he occupied the house. This includes $160.00 for the replacement of formica stained by acid evidently used by a cleaning crew sent out by purchaser’s real estate agent, $140.00 for the replacement of stained carpet and $40.00 for the installation of new locks due to Barber’s failure to return the keys.
Since Barber was justified in not going through with the agreement, the award of the additional amount of interest Yago was required to pay on the construction loan is reversed.
The purchase agreement called for reasonable attorney’s fees to be assessed against the defaulting party. We award Barber $2500.00 in attorney’s fees. An expert witness fee of $150.00 is affirmed.
For these reasons, the trial court’s judgment is reversed and Barber is awarded the return of his $500.00 deposit and $2500.00 in attorney’s fees. This figure is to be offset by $340.00 in damages, and $1080.00 rental at $20.00 per day for the period of occupancy from March Í6,1980 to May 8,1980. All costs are assessed against Yago.
REVERSED.

. This finding is in accord with an oral finding of fact made by the trial judge after the case had been presented.

. The purchase agreement stated: “Seller agrees to maintain premises in present condition and that all heating/air conditioning, plumbing, built-in appliances included in the sale and electrical systems are to be in working order at the time of Act of Sale, unless otherwise provided herein. Purchaser reserves the right to inspect the premises prior to Act of Sale, and any defect discovered by said inspection shall be promptly repaired by Seller, at Seller’s expense.”

. La. Civil Code Article 2756
To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price.

. The agreement to occupy stated:
“Purchaser agrees to pay _0_ per day for the right to occupy.” However, a line was drawn through the “0”, and underneath, in parentheses, was written “based on interest paid by seller.”

. La. Civil Code Article 1965.
The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim, of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity.

.The subsequent buyer of the house paid $20.00 per day rental prior to the sale.