432 So.2d 386 (1983)
ERICKSEN, KRENTEL AND BARRÉ
v.
PIZZOLATO FORD-LINCOLN-MERCURY, INC. and D'Spain-Field Ford, Inc.
No. 82 CA 0683.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
*387 Ronald G. Coleman, Law Offices of Walton J. Barnes, Baton Rouge, for plaintiff Ericksen, Krentel and Barré.
William C. Shockey, McCollister, McCleary, Fazio, Mixon, Holliday & Hicks, Attys. at Law, Baton Rouge, for defendants and third party plaintiffs, Pizzolato Ford-Lincoln-Mercury, Inc.
John L. Dardenne, Jr., Kennon, White & Odom, Attys. at Law, Baton Rouge, for defendants and third party defendants, D'Spain-Field Ford, Inc., and Elmer Field, Jr., appellant.
Before PONDER, SAVOIE and CRAIN, JJ.
PONDER, Judge.
In this suit on open account for accounting fees, the third party defendants, Elmer and Barbara Field, appealed the trial court's judgment finding them liable. Plaintiff, Ericksen, Krentel and Barré, answered the appeal contending that it should have been awarded attorney's fees.
The issues on appeal are liability for the fees incurred prior to the sale of corporate stock and attorney's fees.
We affirm.
Plaintiff rendered services to D'Spain-Field Ford, Inc., primarily the preparation of tax returns and the yearly closing of corporate books. The work for 1979 was completed in 1980 prior to the sale of the stock of the Ford dealership by Elmer and Barbara Field, third party defendants, to Frank and Francis Pizzolato. The agreement contained the following provisions:
"SELLER further warrants to BUYER that there are no long term liabilities not previously disclosed and that the monthly obligations incurred in the running of the dealership are paid and will be paid current and up to date at the time of the sale. Additionally, all long term liabilities not previously disclosed will be the personal responsibility of the SELLER. BUYERS, however, acknowledge that they are assuming any and all responsibilities *388 of D'Spain Field Ford, Inc. to Ford Motor Credit Company or any other parties emanating from the leasing of vehicles or the execution of Partial Repurchase Agreements."
After the sale of corporate stock and the change of corporate name to Pizzolato Ford-Lincoln-Mercury, Inc., Pizzolato Ford received a bill from the plaintiff for the accounting services previously rendered, in the amount of $2,050.00. Pizzolato Ford made four payments of $200.00 each, and then notified plaintiff that because the dealership had changed hands and because the sale of the stock contained a warranty that all indebtedness had been paid, Mr. Field was personally responsible for the debt.
Plaintiff sued Pizzolato Ford and D'Spain-Field Ford for $1250.00 and attorney's fees. Pizzolato Ford filed a third party demand against the Fields asserting that the Fields failed to disclose the debt and were responsible for it under the sale agreement.
The trial judge, without assigned reasons, rendered judgment for the plaintiff in the amount of $1250.00 against Pizzolato Ford and dismissed plaintiff's claim against D'Spain-Field Ford. However, he rendered judgment for Pizzolato Ford as third party plaintiff and against the Fields for $1250.00.
The Fields first argue that the debt owed for accounting services is not a "long term debt" or "monthly obligation" within the meaning of the provision quoted above.
Frank Pizzolato and his attorney testified that they intended that all the bills of the dealership, except those to Ford Motor Credit Corporation, were to be paid at the time of the sale. Mr. Field evidently forgot about the amount owed to the plaintiff during the negotiations for the sale of the dealership.
The intent of agreements is to be determined by the words of the contract, when these words are clear and explicit and lead to no absurd consequences. However, it is the court's duty to construe agreements in accordance with the common intention of the parties rather than adhere to the literal meaning of the terms of the agreement. La.C.C. Arts. 1945 and 1950;[1]Cameron Meadows Land Company v. Bullard, 348 So.2d 193 (La.App. 3rd Cir.1977); Monsur v. Chaddick, 274 So.2d 499 (La.App. 3rd Cir. 1973); Dockson Gas Co. v. S. & W. Const. Co., 12 So.2d 847 (La.App. 2nd Cir.1943).
We do not agree with appellants' contention that the debt is not a monthly obligation because it did not recur every month. We cannot say that the decision of the trial court, that the intent of the parties was to have all corporate debts paid in full except the one to Ford Credit, is manifestly erroneous.
We further note a seller, without any stipulation to the contrary, warrants a buyer against the eviction suffered by him from a part of the object sold and against the charges claimed on the object which were not declared at the time of the sale. La.C.C. Art. 2501.[2] The parties may, by *389 particular agreement, add to the obligation of warranty or diminish its effect. La.C.C. Art. 2503.[3] By writing down particular terms of the warranty, we do not believe the parties intended or accomplished the exclusion of a warranty against a loss suffered by the buyer occasioned by the claims of a third party that existed prior to the sale. La.C.C. Arts. 2500 and 2502.[4]
We do not agree with third party defendants' argument that the debt did not qualify as an obligation until the bill was received, which was after the tenth of the month when bills were normally paid and after the date of the sale. The late billing practices of the plaintiff cannot limit the third party defendants' duty to disclose or pay expenses incurred prior to the sale. The debt arose at the time services were rendered, not when the bill was received. Since there is no evidence of any term for payment of the obligation,[5] we must assume that no term was fixed and the debt could be enforced at the will of the obligee. La. Civil Code Article 2050.[6]
Third party defendants finally argue that any interpretation of the agreement should be construed against the draftsman, who they contend was the Pizzolatos' attorney. However, the court must first determine the intent of the parties and only when this cannot be ascertained will it construe ambiguous clauses against the preparer. Henry v. Ballard & Cordell Corporation, 401 So.2d 600 (La.App. 3rd Cir.1981), affirmed 418 So.2d 1334 (La.1982).
Plaintiff argues that the trial court erred in failing to award attorney's fees. There was contradictory testimony received on the issue of whether a statement was enclosed with the demand letters in compliance with La.R.S. 9:2781.[7] The trial judge *390 evidently believed the testimony of Francis Pizzolato that the demand letters were not accompanied by a bill or invoice. We cannot say that the trial court's finding was manifestly erroneous.
For these reasons, the judgment of the trial court is affirmed with all costs assessed against the third party defendants.
AFFIRMED.
NOTES
[1] La.C.C. Arts. 1945 and 1950:

Art. 1945. Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
FirstThat no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
SecondThat courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
ThirdThat the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.
Art. 1950. When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.
[2] La.C.C. Art. 2501:

Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which were not declared at the time of the sale.
[3] La.C.C. Art. 2503:

The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty.
But whether warranty be excluded or not the buyer shall become subrogated to the seller's rights and actions in warranty against all others.
[4] La.C.C. Art. 2500 and 2502:

Art. 2500. Eviction is the loss suffered by the buyer of the totality of the thing sold, or of a part thereof, occasioned by the right or claims of a third person.
Art. 2502. That the warranty should have existence, it is necessary that the right of the person evicting shall have existed before the sale. If, therefore, this right before the sale was only imperfect, and is afterwards perfected by the negligence of the buyer, he has no claim for warranty.
[5] "Term" is defined by La.C.C. Art. 2048 as:

"The time given or limited for the performance of an obligation, is called its term."
[6] La.C.C. Art. 2050:

When no term is fixed by the parties for the performance of the obligation, it may be executed immediately, unless, from the nature of the act, a term, either certain or uncertain, must be applied [implied]. Thus, an obligation to pay money, without any stipulation for time, may be enforced at the will of the obligee. But a promise to make a crop of sugar is necessarily deferred, until the uncertain period when the cane shall be fit to cut.
[7] La.R.S. 9:2781:

A. When any person fails to pay an open account within thirty days after receipt of written demand therefor correctly setting forth the amount owed and a copy of the invoices in support thereof, that person shall be liable for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Evidence of receipt of written demand by the spouse of the debtor, when they are living together as husband and wife, on behalf of the debtor may be introduced as evidence of written demand on the debtor.
B. If delivery of written demand on the debtor is attempted, but not accomplished because circumstances made delivery of written demand impossible, a notation, on the envelope containing the written demand, made by the person attempting delivery stating the date of the attempted delivery, the reasons why delivery could not be accomplished, along with the initials of the person attempting delivery and making said notation may be introduced as evidence of written demand on the debtor. If the judge in his discretion finds that sufficient evidence of due diligence in delivery of written demand has been made, he may make a conclusion of written demand for purposes of justice and find that there has been written demand on the debtor.
C. For the purposes of this Section, an open account shall include debts incurred for professional services, including, but not limited to, legal and medical services, which are rendered on a continuing basis.
D. As used in this Section, "person" means an individual, association, corporation, partnership, trust, or any other public or private legal entity.