444 So.2d 646 (1983)
Dr. Robert J. CARTER
v.
FINANCIAL ADVISOR & CONSULTANT, INC., et al.
No. 83 CA 0247.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
*647 Guy A. Modica, Sr., Baton Rouge, for plaintiff-defendant-in-reconvention-appellant Dr. Robert J. Carter.
Sumpter Davis, III, Baton Rouge, for defendant-plaintiff-in-reconvention-appellee Financial Advisor & Consultants, Inc. and Jeffrey C. Thomas.
Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
Plaintiff appealed from the trial court judgment awarding him the return of $2,277.20 from a $15,000.00 fee paid on a contract for financial planning and implementation services.
The issues on appeal are the contract's validity, interpretation and breach, the reasonableness of charges under the contract and the weight to be given to expert testimony.
Plaintiff, Dr. Robert J. Carter, paid defendant, Financial Advisor and Consultant, Inc. (FACI) $15,000.00 in advance for financial planning, advice and implementation. Payment was made after FACI prepared a $750.00 feasibility study to determine if plaintiff was a candidate for such a program. The contract, prepared by FACI and dated September 1, 1979, was signed by both parties.
In January of 1981, Carter terminated the contract with FACI and later filed suit seeking the return of the $15,000.00 fee and a fee of $1,000.00 for each referral he made to FACI. FACI reconvened for payment of services rendered under the contract and for damages due for defamation. *648 After trial on the merits, the trial court rendered judgment in favor of plaintiff for $2,277.20, representing a $1,000.00 referral fee and $1,277.20 of the unearned portion of the $15,000.00 fee.[1]
Plaintiff appealed and FACI answered alleging that plaintiff's appeal was frivolous and asking for attorney's fees.
Plaintiff first argues that the trial court should have rescinded the written contract as there was no agreement on the substantial elements and there was a misunderstanding as to the contract's nature and extent.
Both parties must agree to the substantial elements of a contract in order to have a binding obligation. La.C.C. arts. 1779(2), 1798. Sander's Camper Village, Inc. v. Coleman Oldsmobile, Inc., 418 So.2d 679 (La.App. 1st Cir.), writ denied, 422 So.2d 163 (La.1982). The nature of the contract characterizes the obligation which it creates and an error as to the nature will render the contract void. La.C.C. art. 1841.
The contract stated and the parties understood that a fee of $15,000.00[2] would cover development and implementation of a financial plan, including accountants' and attorneys' fees. Both parties understood that the term would probably be four to five years since the contract stated that termination would occur at the conclusion of the program's design and implementation.
The contract also explained the procedure for termination. While it did not include a detailed list of what plans would be implemented, the contract did include a breakdown of what would be included in the case study.[3] When plaintiff received the initial feasibility study, he was given an estimated cost breakdown for the case study, preparation and implementation.[4]
We find a definite agreement as to all substantial elements of the contract and *649 no misunderstanding as to the nature of the contract. We are not convinced by plaintiff's argument that he would not have entered into the contract had he known he would not receive all services listed on the fee schedule. The contract clearly stated plaintiff was responsible for the final decision of whether to implement or disregard recommendations. Plaintiff admitted his failure to call and question or order implementation.
Plaintiff argues that the trial court erred in not construing vague portions of the agreement against FACI, its preparer. We disagree.
The court will construe an ambiguous clause against its preparer only if it cannot ascertain the common intent of the parties. Ericksen, Krentel and Barre v. Pizzolato Ford-Lincoln-Mercury, Inc., 432 So.2d 386 (La.App. 1st Cir.1983). The evidence and the contract made clear the common intent.
The fact that the contract used the words "estimated, reasonable" to describe the costs incurred does not automatically render the phrase ambiguous. Where a fixed price is lacking, the price is determined as that which is reasonable in light of community custom and equity between the parties. Grimaldi Plumbing & Heating Company, Inc. v. Doucette, 414 So.2d 832 (La.App. 4th Cir.1982).
We also disagree with plaintiff's argument that the trial court erred in not finding that FACI breached the agreement by its failure to provide all the services agreed on.
Plaintiff received the two case studies prepared by the defendant in May of 1980 and referred a friend for the services in August of 1980. At that time he was evidently satisfied with FACI's performance. He terminated the contract after approximately one and one-half years at which time seven of the twenty recommendations contained in the initial feasibility study had been implemented.[5] Defendant's president testified that some of the recommendations were not completed because plaintiff did not request them or did not have adequate funds.
Although all listed services were not completed, we find no breach due to plaintiff's failure to pursue implementation.
Plaintiff next argues that the trial court erred in not finding that most of the time charged by defendant was excessive.
As to termination, the contract stated:
I understand that I may at any time by written request terminate your services pursuant to this agreement as of the time of receipt of such request by you. I further understand that if I so terminate your services, you shall return within one month of such termination all fees which I have paid you less the sum of (1) the reasonable costs incurred by you, (2) the reasonable charges of accountants (ranging between $25 and $30 per hour) and attorneys (ranging between $60 and $80 per hour) to be contracted as consultants in connection with this program, and (3) the estimated hours spent by Jeffrey C. Thomas in connection with the design and implementation of this program times $50 per hour.
The trial judge found that the total costs incurred by FACI were $13,722.80. This figure included attorneys' fees, accountants' fees, typing costs, bookkeeping charges, consulting fees and payment for 211 hours and 43 minutes of FACI's president's work at $50.00 per hour. After a thorough review of all the evidence, we find a reasonable factual basis for the court's findings and no manifest error. Although there were some conflicts in testimony, we do not find that the trial court's *650 determination of credibility was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Plaintiff's last argument states that the trial court erred in not relying upon an expert's testimony as to the reasonable amount of time necessary to perform the services in question.
Defendant's expert in financial planning testified that a case study of the scope prepared by defendant would take 80 to 100 man hours not including accounting or implementation. However, the trial court, though concerned with the possibility of excessiveness of hours, concluded that the two studies and partial implementation resulted in the expenditure of many more hours.
The trier of fact is not bound by expert testimony, but evidence of an expert witness is received in the same manner as evidence of non-experts and is to be weighed by the trier of fact the same as any other evidence. Holmes v. Southeastern Fidelity Insurance Company, 422 So.2d 1200 (La.App. 1st Cir.1982), writ denied, 429 So.2d 133 (La.1983). We find no manifest error.
FACI's request for attorney's fees on the basis of plaintiff's frivolous appeal is also without merit. There is no evidence of record that the appeal was taken solely for the purpose of delay or that counsel for plaintiff was not serious in view of the law he advocated. Midco Louisiana Co. v. Aquatic Equipment & Engineering, Inc., 423 So.2d 10 (La.App. 1st Cir.1982).
For these reasons, the judgment of the trial court is affirmed with costs assessed to the plaintiff.
AFFIRMED.
NOTES
[1] The suit against Jeff Thomas, the president and sole owner of FACI was dismissed.
[2] The contract stated in reference to the fee:

A fee in the amount set forth in Exhibit A hereto shall be payable in advance for such service, which fee constitutes (1) the estimated reasonable costs to be incurred, (2) the estimated reasonable charges of accountants (ranging between $25 and $30 per hour) and attorneys (ranging between $60 and $80 per hour) to be contracted as consultants in connection with this program, and (3) the estimated hours spent by Jeffrey C. Thomas in connection with the design and implementation of this program times $50 per hour. If at the completion of design and implementation of such program the actual sum of such costs and charges is less than the estimated fee paid in advance, the difference shall be refunded to me. You shall absorb all costs and charges, if any, in excess of the amount set forth in Exhibit A hereto.
[3] The breakdown of the case study showed the following:
 PART CASE STUDY
 I. Present Assets, Values and Beneficiary of:
 Joint Property
 Life Insurance
 Employee Benefit Plans
 Business Interests
 General Probatable Assets
 II. The mathematics of Estate Analysis
 Summary of Estate Clearance Costs
 Schedule I, Estate Clearance Costs
 Schedule II, Marital Deduction Data
 Schedule III, Liquidity Calculations
 Schedule IV, Family Income
 Plan of Distribution
 III. Analysis & Recommendations
 Summary of Problem Areas
 Estate Clearance Costs
 Lifetime Planning
 Retirement Income
 Disability Protection
 Suggested Plan of Action
 Summation
 IV. General Estate Planning Comments

[4] The estimated cost breakdown stated:

Total fee for case study, case preparation, Phase II, implementation, and product implementation are listed below:

 Retirement $1,200.00
 Business Entity 4,200.00
 Tax Shelters 1,200.00
 Group Disability Insurance 1,200.00
 Estate, Banking, Accounts Receivable 1,200.00
 Living Estate 1,200.00
 Personal Life Insurance 800.00
 Estate Shrinkage and Liquidity 750.00
 Estate Distribution and Management 750.00
 Cash Flow Analysis 1,200.00
 Employees Compensation Plan 1,300.00
 __________
 $15,000.00

[5] The recommendations completed were incorporation of the dental practice, payment of vacations out of earnings rather than capital, enactment of a medical reimbursement plan, restructuring of expense outlay so that the corporate structure would adhere to IRS rules, review of a major disability group plan to bring it to a coordinated benefit level with reimbursement plan, and the examination of office procedures, cash flow, bad debts, collections, etc. and renewal of the financial plan which were ongoing procedures.