446 So.2d 939 (1984)
Roy J. PIPER, Plaintiff-Appellee,
v.
CENTRAL LOUISIANA ELECTRIC COMPANY, INC., Defendants-Appellants.
Donald H. BRADLEY, Plaintiff-Appellee,
v.
CENTRAL LOUISIANA ELECTRIC COMPANY, INC., Defendants-Appellants.
Nos. 83-493, 83-494.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
*940 Patrick J. Briney of Jeansonne, Briney & Goudelocke, Lafayette, for defendants-appellants-appellees.
Gist, Methvin, Hughes & Munsterman, John W. Munsterman, Alexandria, for defendant-appellee.
Provosty, Sadler & deLaunay, Albin A. Provosty, Alexandria, for defendant-appellee-appellant.
James T. Trimble, Jr. and Alonzo P. Wilson of Trimble, Percy, Smith, Wilson, Foote & Walker, and Assoc., Alexandria, for defendants-appellees-appellants.
Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for defendants-appellees.
Before CUTRER, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Roy J. Piper and Donald H. Bradley, plaintiffs, instituted individual suits against Central Louisiana Electric Company, Inc., (CLECO), defendant, following electrical injuries received by them allegedly caused by a defective utility pole owned by defendant. They were employees of Southern Cable Company, in the course of erecting transmission lines for Evangeline Cable Television, Inc., (Evangeline). In the course of this proceeding, these separate actions were consolidated. Pursuant to an indemnification agreement in a Pole Rental Agreement Contract with Evangeline, CLECO subsequently filed a third party claim against Evangeline and Insured Lloyds (Lloyds), Evangeline's insurer, for indemnification should CLECO be held liable. Insured Lloyds denied coverage under the terms of the insurance policy issued to Evangeline. Evangeline sued Lloyds, its insurer, for failure to honor the claim made by CLECO and in a separate third party action, sued Perron Insurance Agency, Inc. (Perron), insurance agent, for failing to place the contractual indemnification coverage with Lloyds should the court find that Lloyds is not liable under the policy. Lloyds filed a motion for summary judgment against CLECO and Evangeline alleging that as a matter of law the issued policy did not provide Evangeline with contractual liability indemnification coverage. The trial court granted the same and dismissed the third party demands against Lloyds. Neither CLECO nor Evangeline appealed the trial court judgment. Perron now effects this devolutive appeal contending that Lloyds should not have been dismissed since the Pole Rental Agreement Contract is an "incidental contract" for which the Lloyds' policy provides indemnification coverage. We agree and therefore reverse.

FACTS
This consolidated action arises out of plaintiffs' attempt to recover damages for personal injuries sustained on May 19, 1981, when they both suffered serious electrical burns. The accident occurred while the plaintiffs were working on a utility pole in the course of placing and removing cable television lines for Evangeline. The accident was allegedly precipitated by a defective cross arm on one of the poles, all of *941 which were owned by CLECO. At the time of the accident, Bradley and Piper were employees of Southern Cable Company, engaged by Evangeline to erect the lines.
Evangeline executed a Pole Rental Agreement Contract with CLECO, acquiring from them the right to attach cable television transmission lines to their utility poles. Paragraph 11 of the contract contains a contractual indemnity clause shielding CLECO from liability arising out of Evangeline's use of the utility poles. CLECO therefore filed a third party demand against Evangeline under paragraph 11 and against Lloyds, asserting that the insurance policy issued by Lloyds contained contractual indemnity coverage which would satisfy CLECO's claim against Evangeline. Lloyds denied such coverage. Evangeline therefore filed a third party claim against Lloyds, its insurer, and Perron, the insurance agent of Lloyds. Evangeline contends that there is contractual liability coverage under the policy to satisfy CLECO's claim, and alternatively, if there is not, then Perron, Evangeline's insurance agent, is liable for failing to place such coverage with Lloyds.
A motion for summary judgment was filed on behalf of Lloyds asserting that the claims of CLECO and Evangeline should be dismissed since the policy generally excluded contractual liability coverage. The trial court granted the motion and dismissed the Evangeline and CLECO third party claims against Lloyds. Subsequently, CLECO entered into a settlement agreement with plaintiffs, Bradley and Piper, reserving its rights against Evangeline.
Perron now appeals the trial court dismissal of Lloyds (the insurer) contending that the Pole Rental Agreement between CLECO and Evangeline (the insured) was an "incidental contract" within the meaning of Lloyds' policy which would provide for liability coverage in this instance.
We previously denied Lloyds' motion to dismiss this appeal. Piper v. Central Louisiana Elec. Co., 437 So.2d 997 (La.App. 3rd Cir.1983) and Bradley v. Central Louisiana Elec. Co., Inc., 437 So.2d 999 (La. App. 3rd Cir.1983). We held that Perron is an aggrieved and interested party, even though not a party to the summary judgments, since Evangeline maintains a third party demand against Perron, alleging that Perron is liable for Evangeline's losses in event Lloyds is not liable under the insurance policy.

ISSUE
The issue presented on appeal is whether the insurance policy, issued by Lloyds, contains provisions which shield and insure Evangeline, the insured, from claims arising out of a contractual liability indemnity agreement contained in the Pole Rental Agreement Contract with CLECO.

POLICY LIMITATIONS
The policy issued by Lloyds to Evangeline clearly disclaims policy coverage for losses and liability assumed by the insured, Evangeline, under any contract or agreement with a third party. However, within the sub-part of this same policy provision, there is an exception which provides coverage for liability assumed by the insured, Evangeline, arising out of "incidental contracts" with third parties. The policy defines an incidental contract as follows:
"`incidental contract' means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;" (Emphasis Added)
Accordingly, if the Pole Rental Agreement Contract between CLECO and Evangeline is an incidental contract, then the trial court erred in granting the summary judgments, holding that the Lloyds' policy did not provide contractual liability coverage in favor of Evangeline.
The Pole Rental Agreement Contract dated October 24, 1978 recites in its preamble that Evangeline proposes to furnish *942 television service to the residents of Mamou, Ville Platte and surrounding rural areas and desires to erect and maintain transmission lines by attaching them to poles owned by CLECO. CLECO consents to providing Evangeline space on its poles to make the attachments. Paragraph 8 of the rental agreement stipulates that Evangeline shall pay an annual rental rate of $3.70 per attachment for the space on the pole and that the initial term of the rental agreement shall be three years to be continued thereafter until terminated, in writing, by either party. Paragraph 25 provides that as additional consideration for Evangeline's use of CLECO's poles it will be obliged to purchase its electric power from CLECO.
It is Perron's contention that the Pole Rental Agreement Contract is an "incidental contract" as defined by Lloyds' policy whereby CLECO consents to lease to Evangeline, for a fixed period of time, and for fixed and substantial consideration, space on its poles to make the necessary line attachments.
In determining the true character of the Pole Rental Agreement Contract, it is first necessary to determine what, if any, significance is to be attached to paragraph 19 of the agreement which stipulates: "Licensee's rights therein shall be and remain a mere license."
Lloyds contends that since CLECO, as the author of the instrument, chose to label the contract a "license" as opposed to an easement or lease, it is therefore, not an "incidental contract" for which Lloyds' policy provides contractual liability coverage. We disagree.
The substance and content of the written contract is replete with language and terms which indicate that CLECO intended to lease space on the utility poles to Evangeline, while reserving certain rights and conditioning the enjoyment or use. The substance of the written contract therefore conflicts with the virtually unknown common law notion and label of "license". This conflict results in ambiguity making it difficult for the parties to determine the species and import of the contract. It is well established that anything doubtful in agreements must be resolved by ascertaining the true intent of the parties as opposed to adhering to a literal sense of the words. LSA-C.C. art. 1950; Dockson Gas Co. v. S. & W. Construction Co., 12 So.2d 847 (La.App. 2nd Cir.1943); Cameron Meadows Land Co. v. Bullard, 348 So.2d 193 (La.App. 3rd Cir. 1977); Ericksen, Krentel & Barré v. Pizzolato, etc., 432 So.2d 386 (La.App. 1st Cir.1983). Therefore, the intent of the parties, CLECO and Evangeline, may not be measured or determined by attributing undue weight to the common law label placed on the contract. Rather, we must examine the substance and express terms of the contract in light of the Louisiana Civil Code in order to determine the true import and species of the contract engaged by the parties, whether it be innominate or classified in the Civil Law. Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610 (1950); American Bank and Trust v. Louisiana Sav. Ass'n, 386 So.2d 96 (La.App. 3rd Cir.1980).
Perron contends that the Pole Rental Agreement Contract is a lease. We agree. LSA-C.C. art. 2669 defines a lease as a synallagmatic contract, to which consent alone is sufficient and by which one party gives to the other the enjoyment of a thing at a fixed price. A contract of lease must contain evidence of a "thing", "price" and "consent". Moreover, the lease of a "thing" is particularly governed by LSA-C.C. art. 2674 which provides:
"Art. 2674. Leasing of things
To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him."
In this instance, the Pole Rental Agreement Contract executed by CLECO and Evangeline is for a definite thing, the right of Evangeline to make attachments to CLECO's poles for a term of three years. Further, there is a stipulated price of $3.70 *943 per attachment, plus Evangeline's agreement to purchase its electrical power from CLECO. For these reasons, we hold that the Pole Rental Agreement Contract is a lease and will therefore be treated as such for purposes of determining whether it is an incidental contract under the Lloyds' policy.
Lloyds further contends that the policy definition of "incidental contracts" succinctly states, "lease of premises" for which a utility pole is not a premises. We disagree. The term "premises" is a very general and purely descriptive label used to define various localities including a room, building, definite area or a distinct portion of real estate or its appurtenances. Blacks Law Dictionary, 5th Edition, page 1063. We hold that the Pole Rental Agreement Contract represents the lease of specific premises, namely, the area or distinct portion of an immovable appurtenance, i.e., utility pole.
In order to provide its customers with television services, Evangeline entered into the Pole Rental Agreement Contract so that it could string necessary wire and cable. As an incident to the business, Evangeline must either erect its own poles or rent existing poles from CLECO or some other utility. Therefore, by its very nature, the contract between the parties is incidental to Evangeline's business.
Having found the contract between Evangeline and CLECO to be a lease within the meaning of the Civil Code, and having found the contract to be a necessary incident to Evangeline's business, we hold the Pole Rental Agreement Contract to be an incidental contract within the meaning of the policy issued by Lloyds to Evangeline. Accordingly, the clear provisions of the Lloyds' policy provide Evangeline with coverage for claims made by CLECO against Evangeline arising out of the indemnification clause (paragraph 11) of the Pole Rental Agreement Contract.
For the above and foregoing reasons, the summary judgment of the trial court dismissing Insured Lloyds from the third party demands of CLECO and Evangeline is hereby reversed and the matter is remanded for further proceedings. All costs of the motion for summary judgment and this appeal are assessed to appellee, Insured Lloyds; other costs to await final disposition.
REVERSED AND REMANDED.