ALFORD, Judge.
This is an appeal from a judgment awarding plaintiff, A.J. Scafide, $21,641.43 under the doctrine of unjust enrichment for actions taken by the defendant, C. Itoh Industrial Machinery, Inc. (CIM) in regard to plaintiffs forklift.
On May 20, 1982, plaintiff purchased a forklift in the possession of Louisiana Lift Truck, Inc. (LLT), a corporation wholly owned by his son, Gregory Scafide. At the time of purchase, the plaintiff was a temporary employee of LLT serving as vice president and general manager. While the plaintiff did not own any stock or interest in LLT, he did own another forklift which he was renting out throught LLT.
CIM, a distributor, sells lift trucks solely to its authorized retail dealers at wholesale prices. LLT was one of its retail dealers. LLT also dealt in the rental of forklifts owned by itself and by others such as the plaintiff. CIM had delivered the forklift in question to LLT on October 29, 1981, on a 180-day letter of credit with Terrebonne Bank, thus the amount owed for the forklift became due prior to plaintiffs purchase. The plaintiff personally arranged with Terrebonne Bank to pay CIM $21,-667.70 directly rather than paying through LLT, and he became the legal owner of the forklift as of May 20, 1982.
During the spring and summer of 1982, LLT experienced serious financial difficulties. In July of 1982, Gregory Scafide was in the midst of negotiations with CIM regarding LLT’s delinquent account. Gregory discussed returning a forklift owned by LLT to CIM with Dick Mattox, CIM’s general manager for marketing. Credit for the returned forklift was to be applied to LLT’s account. Gregory testified he also spoke with Mr. Mattox about returning his father’s forklift at the same time, with the credit for his father’s forklift to be given directly to his father or to Terrebonne Bank. Gregory stated that he had never previously attempted to return a forklift belonging to someone other than LLT and that Mr. Mattox told him CIM didn’t usually issue credit to end purchases, but that they would do so in this case because the purchaser was Gregory’s father. Mr. Mat-tox denied that he had ever told Gregory that the forklift could be credited to the plaintiff directly, either in conversations prior to or after the return of the forklift. Mr. Mattox did admit that at some point after the forklift had been returned to CIM, he told Gregory he would check on having a refund issued directly to the plaintiff or to Terrebonne Bank.
The forklift owned by the plaintiff, together with another forklift belonging to LLT, was shipped to CIM in Texas on or before July 23, 1982. CIM credited the account of LLT with the amount of purchase, less a discount and an amount for refurbishing the machine, for each of the returned forklifts. CIM notified Gregory about the credit to LLT for the forklift in question by a letter dated July 22, 1982. CIM also sent LLT a credit memo dated July 23, 1982, and a letter dated August 4, 1982, showing that LLT’s account had been credited with $18,686.30 for said forklift. Gregory and the plaintiff then contacted CIM claiming that the credit had been in *153 correctly applied to LLT’s account and sought to have the credit issued directly to the plaintiff. CIM refused and the plaintiff engaged counsel who wrote to CIM on August 24, 1982, demanding that the plaintiff receive the credit directly. Thereafter, the plaintiff filed suit for tortious conversion of his property. In January of 1983, CIM sold the forklift in question to a third party, who is not involved in this litigation.
The trial court, after hearing the testimony and reviewing the evidence, determined that no contract ever came into existence because there was never a meeting of the minds between plaintiff and defendant. The court further found that tortious conversion did not apply in the instant case[1], but that the plaintiff proved the necessary elements for unjust enrichment under La. Civ. Code art. 1965[2]. Therefore, the court awarded plaintiff $21,641.43 as the price of the forklift less the refurbishing costs. While we agree with the trial court’s action as to the determination of liability, the record reveals an error as to calculation of the amount awarded to plaintiff. Plaintiff paid $21,657.70 for the forklift and the refurbishing charges were $1,016.07. Thus, the amount owed to the plaintiff by the defendant is $20,641.63, or $999.80 less than awarded by the trial court. Accordingly, we amend the judgment to show the correct amount.
Defendant contends that the trial court erred in finding that no contract was ever entered into between the parties. The court found there was no meeting of the minds as required by La.Civ. Code arts. 1766, 1779 and 1819.
Both parties must agree to substantial elements of a contract in order to have a binding obligation. Carter v. Financial Advisor & Consultant, Inc., 444 So.2d 646, (La.App. 1st Cir.1983), writ denied, 446 So.2d 313 (La.1984).
The court found that Gregory Scafide acted as an agent for his father and not on behalf of LLT when he discussed the return of plaintiff’s forklift with Mr. Mattox and when he returned said forklift to CIM. The court stated,
It is illogical to suppose that both father and son, knowing the financial difficulties the corporation was suffering, would have given up a valuable piece of equipment for anything less than payment to satisfy the bulk of the debt to Terre-bonne Bank. Therefore, delivery of the forklift was made to Itoh [CIM] while the plaintiff was laboring under the illusion that he, not LLT, would be paid by Itoh [CIM].
In regard to CIM, the court found that Mr. Mattox was not aware of the agency status at the time of the telephone negotiations. The evidence in the record shows that Mr. Mattox handled the return of the forklift as a return from the dealer just as he had in other instances where the owner of the returned equipment v/as LLT. LLT’s account was credited and the refund of the price was assumed to be a matter between the dealer and the customer, in this case the plaintiff. However, the record also indicates that Mr. Mattox later learned of plaintiff’s ownership of the forklift and that he did tell Gregory that he would check with his superiors about making a refund to plaintiff directly. The response was negative due to CIM’s policy of not making direct refunds to retail purchasers.
Thus the court determined that there was not a valid contract between the parties. It is evident that the trial court made the factual finding that the requisite consent was missing because the intent of each of the parties had not been mutually communicated, understood and agreed to as required by La.Civ. Code 1819.[3] Find *154 ings of fact made by a trial court will not be disturbed on appeal unless manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). A review of the record amply supports the trial court’s factual findings as reasonable and not clearly erroneous.
Defendant also contends that the five prerequisites for the application of the doctrine of unjust enrichment have not been met. Specifically, defendant alleges that the trial court erred in finding that the defendant was enriched.
The equitable doctrine of unjust enrichment arises from La.Civ. Code art. 1965 which provides for the “moral maxim of the law that no one ought to enrich himself at the expense of another.” The doctrine is properly applied in cases wherein the parties attempting to contract have not reached a meeting of the minds. See Barber v. Yago Enterprises, Ltd., 426 So.2d 661 (La.App. 1st Cir.1982).
According to the Louisiana Supreme Court, the five prerequisites for the application of the equitable doctrine of unjust enrichment are (1) there must be an enrichment, (2) there must be an impoverishment (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of justification or cause for the enrichment or impoverishment and finally, (5) the action will only be allowed when there is no other remedy at law. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). In the instant case, the trial court in the reasons for judgment stated:
Plaintiff has proved an enrichment: Itoh [CIM] was enriched by the value, less refurbishment costs, of the returned forklift, for which it had already been paid. Plaintiff has proved impoverish,ment: he no longer has the forklift nor the price of it. There is obviously a connection between the enrichment and the impoverishment; but for the one, the other would not exist. Nor is there a justification or cause for either the enrichment or the impoverishment; neither party acted in bad faith to mislead the other.
Finally, this not being a case for quantum meruit and having found that the facts do not support an action for tor-tious conversion, this Court sees no remedy at law other than unjust enrichment to correct the impoverishment which has been suffered by plaintiff.
Of the five prerequisites, only the requirement for enrichment was challenged by the defendant. CIM states it correctly credited the money originally received for the purchase price to LLT before it sold the forklift to another party and therefore was not enriched in any . respect. The amount paid by the plaintiff was $21,657.70. The record shows that $18,686.30 was credited to the open account of LLT, a corporation in which the plaintiff had no financial or legal interest. By crediting this amount to LLT, CIM reduced the $100,000 plus debt owed to it by LLT. Since the debt was uncollectable because of the insolvency and pending bankruptcy of LLT, CIM improved its status in respect to that debt by so crediting the price. Moreover, CIM then sold the forklift, with full knowledge it was owned by the plaintiff and not LLT, to another party for more than $18,000. Therefore, we feel that the record adequately supports the trial court’s determination of unjust enrichment on the part of CIM.
For the above and foregoing reasons, we affirm the judgment of the trial court as to liability and amend the damage award to show the correct amount of $20,641.63, plus legal interest from date of judicial demand. Costs of this appeal are to be borne by the defendant.
AMENDED, AND AS AMENDED, AFFIRMED.

. The court’s finding that there was no tortious conversion was not appealed and is not before us.

. All references to Civil Code articles in this opinion refer to articles as they appeared prior to the revision of Title III of Book III of Obligations, by Acts 1984, No. 331 § 1, effective January 1, 1985.

.The pertinent part of La.Civ. Code art. 1819 states:
Consent being the concurrence of intention in two or more persons, with regard to a matter *154 understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, ...