BOUTALL, Judge.
This appeal arises from a judgment of the trial court awarding to the plaintiff and against the defendant the sum of $4200, as payment due in a contract for personal services.
On or about January 1, 1976, the plaintiff, Insurance Analysis, Inc. (hereinafter referred to as IA) entered into a contract with the defendant XPLO Corporation wherein the former agreed to perform professional insurance consultant services at the rate of $3000 per year. IA allegedly performed the services for not only the one year period during 1976, but also worked for the first two months of 1977. Upon the alleged completion of the services by the plaintiff the defendant failed to make payment in accordance with the terms of the contract. Thereafter, IA filed suit against XPLO for breach of contract, seeking recovery of the fees allegedly due under the terms of the agreement between the two parties. In response thereto, XPLO answered and alleged that the contract was null and void as there was an error as to their primary motive for entering into the contract.
Upon trial of this matter the lower court entered judgment in favor of IA in the sum of $4200 and against XPLO. From this judgment XPLO has appealed suspensively.
On appeal there are several issues for our consideration including: 1.) Whether there was an error as to the principal motive of the contract thereby rendering it null and void; 2.) whether the plaintiff breached the *1216 contact by failing to fulfill all of its obligations under the terms of the contract; 3.) whether the trial court committed error in making an award to the plaintiff for services performed in 1977.
-I-
The Louisiana Civil Code provides several articles concerning the first issue before us. The relevant portions of these articles are as follows:
Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error which will invalidate it. La.C.C. Art. 1823.
To have that effect, the error must be in some point, which was a principal cause for making the contract, when there are several. This principal cause is called the motive and means that consideration without which the contract would not have been made. La.C.C. Art. 1823, 1825.
No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it. La.C.C. Art. 1826.
In Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 the Louisiana Supreme Court simplified the meaning of these articles as follows:
* * * * “These articles of our Code simply mean that error in the determining motive, or principal cause, of a contract vitiates consent and invalidates the contract. Error as to a subsidiary motive has no effect upon the validity of the contract.”
Also see: Walker v. Don Coleman Const. Co., Inc., 338 So.2d 1183 (La.App. 3rd Cir. 1976).
One of the exhibits entered into the record by the defendant was a letter from IA to XPLO dated October 25, 1975 in which the former was attempting to sell insurance consulting services to the latter. In the course of this letter IA made the following statement: “Our fees are predicated on the size and complexity of the account. We have in every case saved our clients much more in insurance premiums than our fees.” XPLO contends that the insurance premiums it paid under the program established by IA did not save them money above and beyond the fees charged by IA. Accordingly, XPLO contends that the failure by IA to fulfill these terms was an error as to the principal cause or motive for the contract entered into between the parties on January 1, 1976 and therefore, this agreement was null and void.
Upon a review of the record in this matter we find that the evidence is inconsistent as to whether the terms of the letter indicated above were satisfied. Burnett Tappel of IA testified that he made several suggestions to XPLO which would have saved the latter more than enough money in premiums to cover the costs of the fees charged by the former. One of these suggestions involved obtaining insurance for XPLO on a yearly basis instead of on a job to job basis which was the method used by XPLO. Tappel further testified that the insurance they procured for XPLO on a job to job basis was more competitive than they had prior to the time of the agreement. Conversely, John Charpentier of XPLO testified that the proposed insurance package by IA was more expensive than the kind that XPLO had at that time.
Following the conclusion of the trial in this matter the trial court determined that the contract entered into between IA and XPLO was a valid one. Apparently, the court determined that there was no error as to the principal cause or motive for the agreement which would vitiate the consent of the parties and thereby nullify the contract.
On appeal the manifest error doctrine has direct application to the findings made by the lower court. This doctrine states in pertinent part:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should *1217 not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.”
Canter v. Koehring Co., 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Based on the foregoing we find that there has been no showing of any manifest error made by the trial court as to the validity of the contract between the parties. We believe that the lower court properly resolved the conflict in the testimony before it.
-II-
Regarding the second issue before us, XPLO contends that IA failed to fulfill all of the obligations it was required to perform under Section 2 of the contract between them. This provision states:
“2. The CONSULTANT agrees to perform the following services to assist the CLIENT in administering and controlling his insurance programs:
“a. Review of Retrospective Rating Plan; auditing current plan; rechecking computations of past adjustments up to the three past years; verifying open loss reserve credits; recommending proper Plan selection.
“b. Review of Experience Rating; audit of current modification formula and proper loss discounts; recommend methods designed to control and reduce future modifications.
“c. Analyze appropriate records of the loss experience of the CLIENT as well as other records which the Insurance Companies may furnish to the CLIENT and to periodically render to the CLIENT and the Insurance Companies conclusions based on such records. Request status of past and current losses, verify adequacy of reserves, determine closing costs, and assist in the closing of the open cases, which matured.
“d. Review of payroll reporting procedure, payroll insurance classifications; assist CLIENT at final audit, verify company billings.
“e. Analyze current casualty and property insurance policies, and make recommendations as to coverages, limits, costs, rating plans.
“f. Propose changes for renewal and assist CLIENT’S insurance agent or broker in marketing, negotiation and securing of renewal coverages.
“g. Recommend other services as indicated below and supervise and coordinate said services where appropriate.
“Marine Surveys
“OSHA
“Noise and other industrial hygiene tearing
“Electrical hazard tests
“Life insurance, Pensions, Trusts, Medical Plans
“Property valuations and surveys
“Elevator inspections
“Tax advisories (as related to insurance programs).”
Of the many services listed in this portion of the agreement, Tappel testified that virtually all of them were performed either orally or in writing. Moreover those that were not performed were not applicable to XPLO. Tappel further testified that he negotiated several contracts on behalf of XPLO in which he tried to get the other party to the agreement to pay the insurance premiums instead of XPLO. This service was not provided for in the contract but was nevertheless performed by IA. On the other hand, Charpentier testified there were some services that were not performed. Of those mentioned by him several of them were apparently not applicable to XPLO.
Upon consideration of the record as a whole we find there is little or no support for the contention made by XPLO. We believe that IA fulfilled its obligations under the terms of the agreement. Further *1218 more, there was no finding made by the trial court of a breach of contract and therefore, in the absence of manifest error, we are bound to uphold the performance by plaintiff. Canter v. Koehring, supra. The contract fee of $3000 for 1976 is affirmed.
-Hi-
Regarding the third issue presented for our consideration, the record reflects that IA performed 20 hours of services on behalf of XPLO during the first two months of 1977. IA contends that under the terms of the contract it is entitled to compensation for the services rendered. Conversely, XPLO contends that the contract expired on December 31, 1976 and therefore, IA is not entitled to any remuneration. The lower court in its judgment awarded $1200 to IA as compensation for the services performed by IA in 1977 on behalf of XPLO.
The pertinent provisions of the agreement between the parties relative to the length of time for the existence of the contract are as follows:
“1. The CONSULTANT agrees to perform insurance consultant services for CLIENT for the term of one year commencing January 1, 1976 to January 1, 1977 unless renewed as herein provided.
sic S(! # sfc sfc #
“9. The services of the CONSULTANT [may] be terminated at the end of one year from date hereof or any extensions thereof by either party giving the other party notice of termination at least thirty (30) days in advance in writing whereupon the services of the CONSULTANT shall cease as of the anniversary date.”
Upon a review of this language we find it to be very ambiguous. However, we believe that the parties could have intended only one meaning to these terms, that is, the agreement continues in existence indefinitely until such time as a 30 day notice of termination was issued by either party. Since there is no 30 day notice in the record, we find that IA is entitled to a recovery for the services performed on behalf of XPLO for the first two months of 1977. The trial court based its $1200 award for these services on an hourly rate of $60 per hour for the 20 hours of services. We disagree. The award for services beyond January 1, 1977 should be based on extension of the contract, which provided a yearly fee of $3,000, unchanged for the extension. Thus the award should have been $500, which figure represents V« of the $3,000 annual fee for the two months during which the services were performed.
Based on the foregoing, we order that the judgment of the trial court be reduced to $3,500 and as amended, we affirm.

AMENDED AND AFFIRMED.