MARVIN, Chief Judge.
In this action brought by a private detective agency, Mrs. Gabel appeals a judgment awarding plaintiff $4,971 for investigative services and $1,242 attorney fees under a written contract.
She contends plaintiff presented only “vague and unverified billing” and did not prove its performance of the contract or comply with LRS 9:2781, the Open Account Law.
With slight amendment, we affirm.
*356 FACTS
Mrs. Gabel’s husband was murdered on March 10, 1988. Before March 31, Mrs. Gabel was contacted by Jeff Shadoin, a friend who sometimes worked for plaintiff, who arranged for plaintiffs president, Howard Malpass, to visit at Mrs. Gabel’s home. There they discussed, in Shadoin’s presence, the contract to privately investigate the murder. Malpass said he waived any retainer because Mrs. Gabel was a widow on a fixed income with two small children and that he and Mrs. Gabel understood she would have to pay for his services only after she collected life insurance proceeds on her late husband’s life.
The written contract, on a printed form supplied by Malpass, which was signed by Mrs. Gabel, obligated her to pay plaintiff $35 an hour for its services plus mileage and other expenses set forth in a schedule on the reverse of the contract. Plaintiff began investigating shortly after the date of the contract, March 31, 1988. About three weeks later Malpass discussed by telephone with Mrs. Gabel some details of the investigation.
Malpass testified that Mrs. Gabel had not requested a cap on fees and that they never specifically discussed the billing other than the fact that she would be sent a bill. Malpass testified he had later tried to contact Mrs. Gabel but she had moved to another residence and he was not successful.
Malpass thereafter continued his investigation and wrote Mrs. Gabel on September 26,1988, that they should meet in his office to discuss the case
as well as the charges in your file as to the investigation. It is my understanding that you now have settled with your insurance company and per our agreement, you would not be charged anything prior to that time. I have not heard from you and countless amounts of phone calls to your former address were to no avail.... Please contact me so we can set up an appointment.
After Malpass mailed the September 26 letter to Mrs. Gabel he was contacted by a Caddo Parish Sheriff’s deputy who informed him that he had learned that Mal-pass was withholding evidence in the murder investigation. Malpass testified he was very insulted by this accusation. Malpass did not charge Mrs. Gabel for any investigative work after October 7, 1988, but voluntarily pursued the investigation intermittently after that date simply because he was curious about some of his leads.
On October 11, 1988, Malpass sent Mrs. Gabel a bill and a demand letter stating she would be sued if she did not pay her bill within 10 days. He also threatened to sue her for defamation of character. Malpass said Mrs. Gabel did not attempt to terminate his investigation or cancel the contract as its terms provided [“Client may cancel investigation at any time in writing ... and will pay for any services rendered prior to cancellation.”]. He said she did not give him any indication in the April 1988 telephone conversation that he should or should not continue investigating. Mrs. Gabel did not deny or contradict his account of that conversation.
Malpass said he had obtained leads in the case and had turned over his information to the Sheriff’s Office as Mrs. Gabel had instructed him. Malpass explained his lack of contact with Mrs. Gabel was based on her initial instructions to him to keep in touch with the Sheriff’s Department about any information he obtained because she had a relative there who would relay the information back to her.
Malpass was questioned extensively as to specific entries on the invoice he mailed to Mrs. Gabel. The majority of the entries involved charges for following up on leads which required trips to such places as Zwolle to investigate a similar murder, to Minden and to Belcher.
Mrs. Gabel said she was contacted by Malpass approximately a week following their first meeting. She said that was her last contact before she received plaintiff’s September 26 letter asking her to meet with Malpass to discuss the case and payment of plaintiff’s charges. She said after receiving that letter, she telephoned Mal-pass and told him she was not aware of the fact that she had hired him. She said he told her “he would turn over everything he *357 had to the Sheriffs department ... if I didn’t pay him within ten days.” Mrs. Ga-bel then took the letter to her attorney who told her to contact the Sheriff’s Office and complain that Malpass may have been withholding evidence.
Mrs. Gabel acknowledged that Malpass had never told her plaintiff would undertake the investigation for free. She explained she did not read the contract because Shadoin had already told her he was going to do the investigation as a favor. She said she never attempted to contact Malpass after the initial meeting because she did not realize that she had hired him. She said she thought Malpass had discontinued the investigation because he had not contacted her and she had not been paying him anything.
The trial court awarded plaintiff $4,971.50 together with attorney’s fees in the amount of $1,242.87. The trial court noted that Mrs. Gabel’s defense to the lawsuit for the collection of fees appeared to have been a mixture of duress, error or mistake and possible fraud. The court stated that none of these matters had been pleaded as affirmative defenses and that plaintiff timely objected to any evidence with respect thereto. The court noted that Mrs. Gabel had testified she had been told by Shadoin, who sometimes worked as a contract employee for plaintiff, that his services would be free. Shadoin did not testify at trial. The court concluded there was no evidence in the record to suggest that Shadoin’s work was included in plaintiff’s bill. The court noted that the back of the contract provided the rates that plaintiff was to charge defendant. Neither Mrs. Gabel nor her private detective-witness contested the reasonableness of the rates. The trial court found plaintiff’s rates reasonable.
Malpass’s testimony about his investigation, who he interviewed, about what, at what distance away, was general and somewhat vague in response to cross-examination, but became more specific and detailed in response to questions by the trial court. Malpass testified his routine billing procedure was to take the information from his notes and then total up the charges. Most of his notes went on dictation tapes which were then typed by a secretary and put into a computer. Malpass explained that Mrs. Gabel’s file and billing was not updated on a daily basis because he did not work the case on a daily basis. Using his tapes, notes, slips, and pocket calendar, Malpass compiled the invoice he mailed to Mrs. Ga-bel. There was no objection to these items being the “best evidence” of their content and the work done by plaintiff, and these items were not produced at trial. The invoice billed Mrs. Gabel for 120.5 hours of work and 1,460 miles traveled during the six-month intermittent investigation. The judgment was based on these figures. Compare Theus, Grisham, Davis & Leigh v. Dedman, 401 So.2d 1231 (La.App. 2d Cir.1981).
The contract provided for attorney fees and obligated plaintiff to submit a report of its investigation to Mrs. Gabel. Malpass testified that a report was available to her upon her payment of the bill.
Obviously resolving credibility in favor of plaintiff, the trial court rendered judgment for the amount demanded and prayed for, plus 25 percent attorney fees.
THE ASSIGNMENTS
Mrs. Gabel acknowledges that she did not plead, and is precluded from asserting, affirmative defenses. She explains that she is here asserting, under her general denial, plaintiff’s non-performance of the contract. The issue on appeal is best stated as whether the trial court was clearly wrong in its judgment that plaintiff performed the services and drove the mileage for which it billed Mrs. Gabel.
Unworkmanlike performance, an affirmative defense which must be especially pleaded, is distinguished from non-performance. Evidence directly tending to disprove performance is admissible under a general denial. Brightway Signs, Inc. v. Sharkey, 457 So.2d 758, 760 (La.App. 1st Cir.1984).
We must conclude that the record preponderates to support the conclusion that *358 plaintiff substantially performed its contract. Mrs. Gabel’s evidence to disprove plaintiffs performance consisted of the testimony of another private investigator, Gene Aymond, and her complaint that she knew nothing about contracting with plaintiff or about the services that plaintiff was rendering under the contract because plaintiff failed to inform her of these things initially as well as periodically after the contract was signed.
Aymond’s testimony is summarized by Mrs. Gabel to the effect that it is “common practice ... to clear an investigation when it appears that such an investigation is going to be more extensive than originally envisioned.” Aymond said it was not his practice to continue work for a client after “two, three, four hours ...” without some [further] contact with the client.
The trial court heard the witnesses and Malpass’s explanation of why he did not more frequently contact Mrs. Gabel during the course of the investigation. The trial court questioned Malpass to learn more of the details of the investigation plaintiff conducted.
Mrs. Gabel’s two assignments complain that the trial court should not have accepted the “vague and unverified billing statements of [plaintiff]” in the light of plaintiff’s “inability to verify the performance of the services charged ... and inability to provide a final report ...” The trial court obviously accepted Malpass’s testimony of the circumstances under which the services were performed and billed by plaintiff. The record, contrary to Mrs. Gabel’s quoted contention, does not suggest plaintiff’s “inability” to provide a final report. Mal-pass stated that a report was or would be “available” to Mrs. Gabel when she paid her bill. The contract provides that the amounts due under its terms are payable within 10 days after billing on completion of the assignment and “making report available.”
On this record and even assuming that plaintiff should have maintained closer contact with Mrs. Gabel, we cannot find the trial court was clearly wrong in its judgment and its express and implied factual conclusions that are contrary to Mrs. Ga-bel’s argument. See and compare Carter v. Financial Advisor & Consultant, 444 So.2d 646 (La.App. 1st Cir.1983), writ denied; and Insurance Analysis, Inc. v. XPLO Corp., 398 So.2d 1214 (La.App. 4th Cir.1981).
The contract also obligates Mrs. Ga-bel to pay 25 percent of the “total outstanding” on the bill for investigative services as attorneys fees, which the court awarded ($1,242). Notwithstanding that plaintiff styled its action as one on an open account, LRS 9:2781, we need not address Mrs. Gabel’s argument that attorney fees are not recoverable because plaintiff’s demand letter did not comply with the statutory requirements. The contract between plaintiff and Mrs. Gabel clearly obligates Mrs. Gabel to pay attorney fees in the event the bill for investigative services is not paid within 10 days after demand. The attorney fees in question are not of statutory origin. Considering the record and that Mrs. Gabel’s only complaint about the attorney fee award is based on LRS 9:2781, we do not find the attorney fee awarded to be unreasonable.
DECREE
Costs are assessed to appellant. Considering that Malpass testified that a written report will be available upon payment, we amend the judgment to require plaintiff to file a sealed copy of the report with the clerk of the trial court for Mrs. Gabel within 14 days after Mrs. Gabel satisfies the judgment.
The judgment, as amended, is AFFIRMED.